IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY.

### FEBRUARY TERM, 1884.

---

CATHARINE SULLIVAN v. WILLIAM BARRY. CATHARINE
SULLIVAN v. JOHN CASH AND WILLIAM BARRY.

A married woman can, without the co-operation of her husband, create a
term of years in her lands.

---

Of these two cases, transferred from the District Court of
Jersey City, and tried together, the facts are as follows:

Wilhelmina Wagner rented a store, being the first floor of
the four-story house 543 Henderson street, to William Barry
in May, 1883, on a monthly letting for $15 per month, pay-
able in advance, and he went into possession.

On July 25th, 1883, she executed the following document:

"An article of agreement made and entered into this 25th
day of July, 1883, between Mrs. Jacob Wagner, of 146 Pa-
vonia avenue, Jersey City, of the one part, and Mr. William
Barry, of 168 Eleventh street, Jersey City, of the other, in

which Mrs. Jacob Wagner agrees to lease and William Barry agrees to take her house property in 543 Henderson street, for the term of five years, to commence on the 1st day of August, 1883, for $50 a month, same to be paid 15th of every month.

"Subject to following conditions: Said Mrs. Jacob Wagner agrees that said William Barry own and take with him, bar, fixtures, and other movable property belonging to the bar-room, when leaving.

(Signed)     "WILHELMINA WAGNER.
            "WILLIAM BARRY.

"Witness:
        "CORNELIUS MURPHY.
    "Dated the 25th day of July, 1883."

Mrs. Wagner was a married woman. Her husband did not join in the agreement. She owned the property by title acquired since 1852.

July 30th, 1883, Mrs. Wagner united with her husband in a contract under seal, to sell the whole building and lot to plaintiff. Plaintiff agreed to pay $500 per year, for five years, besides interest on the contract price, and then to take a deed and give a mortgage for the residue of the price. The contract contained this provision:

"The party of the second part. to be given the possession of said premises, and the same when given to be free from any lease or debts except the mortgage to Gibson. Possession to be given August 1st, 1883."

The upper part of the building (three floors) was used as a tenement-house, and was occupied by monthly tenants. On July 31st, notice was given by Mrs. Wagner to Barry and the other tenants, that the property had been sold, and that they should pay their rent to the plaintiff for the future. Barry refused to pay plaintiff $15 per month for the store, and insisted on his lease from Mrs. Wagner for five years, and offered to pay $50 per month for the whole premises, and tendered that amount to Mrs. Wagner, and afterwards, by her direction, to the plaintiff, who refused to receive it.

Sullivan v. Barry.

In September, plaintiff made demand for $30 rent, for the store, for August and September, and brought this suit to dispossess Barry from the store for non-payment of rent.

Among the monthly tenants of Mrs. Wagner was John Cash, whose wife was in the habit of paying his rent. She paid in August to plaintiff. For September she paid Barry. Plaintiff made demand on John Cash for September rent, (which was payable in advance,) and brought suit to dispossess him for non-payment thereof. September 3d, by arrangement with Barry, Cash moved into another room in the same building, and Barry moved with his family into the premises vacated by Cash.

On this state of facts the following questions are certified to the Supreme Court by the Hudson Circuit Court, for an advisory opinion:

1. Has the plaintiff any standing to bring the dispossession suit against Barry?

2. Has the plaintiff any standing to bring the dispossession suit against Cash and Barry?

3. Is the lease made by Wilhelmina Wagner without her husband, valid?

Argued at November Term, 1883, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE, VAN SYCKEL and SCUDDER.

For the plaintiff, *Collins & Corbin.*

For the defendant, *J. Flemming.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. This was a proceeding by virtue of the act concerning landlords and tenants. and consequently, in order to manifest a legal *status*, the plaintiff was bound to show that the relationship of landlord and tenant existed between himself and the defendant. In order to supply this requirement the position in behalf of the plaintiff was taken on the argument before this court, that a married woman,

under the laws of this state, could not create a term of years in her lands without the co-operation of her husband.

It is difficult to understand how it was supposed that, with respect to the proceeding against Barry, such a contention could be of any worth. The salient features of that case are these: Mrs. Wagner being a married woman, made a lease by the month, at the rate of $15 per month, of the first floor of the house in dispute, to this defendant, and subsequently executed a document whereby she demised to him the whole of her premises for five years at $50 per month. She then, in conjunction with her husband, entered into articles of agreement for the sale of the premises to the plaintiff, and transferring to him, as far as she was competent so to do, the right to the possession on the first day of August next following the date of such contract.

Therefore, if we assume, with the counsel of the plaintiff, that the letting by the married woman, acting without the concert of her husband, was void, the effect of such a premise would be this: not that a tenancy would arise between the plaintiff and the defendant, but that the defendant would be in the possession without right, and if he refused to remove could be treated as a trespasser. The authorities cited in the brief of the counsel himself are plainly to this effect. For example, in the case of *Buchanan* v. *Hazzard*, 95 *Pa. St.* 240, the married woman made a lease of a lot of land to run for fourteen years, and it was held that such lease being void an action of ejectment would lie. Such must obviously be the result of holding the lease executed by the *feme covert* to be a nullity. But it is not, in this procedure, enough for the plaintiff to show a right in himself to the possession of these premises, and that the defendant is, as to him, in the situation of a wrong-doer. This is a course of law taken under the Landlord and Tenant's act, and the consequence is, there must be proof, in order to justify the measure, of the relationship of landlord and tenant between the litigants. As between himself and the owner of the property, the plaintiff undoubtedly has the right to the enjoyment of these premises, but as

the title is not in him with respect to the defendant he does not stand as a privy in estate, nor as a privy by contract. It is true that the counsel of the plaintiff claims in his brief that the defendant recognized his right to the possession of the property by tendering him $50, being the amount of one month's rent. But the case stated shows that these proceedings were founded on the former of the two leases made by Mrs. Wagner to the defendant, which called for the payment of $15 per month, and that the defendant refused to pay the plaintiff this rent, but on the contrary, stood on the ground of the second lease, and in compliance with its terms, offered to pay Mrs. Wagner at that rate, and made her a tender of $50, which under that renting was a month's rent, and afterwards, by her direction, tendered that money to the plaintiff, who refused to receive it. Such a transaction very plainly could validate neither of the leases in question; not the second, because the plaintiff disowned its obligations, and not the first, as it was rejected by both of these parties.

Consequently, even granting to the plaintiff the general legal rule for which he contends, this suit against the defendant Barry has no basis in law.

But the legal proposition thus assumed, for the purposes of the foregoing discussion, is not to be conceded.

It seems to me that there is nothing in the law of this state which will prevent a married woman from creating, apart from her husband, terms of years in her real property. It is claimed that a *feme covert* has been deprived of the power thus to turn her property to account by force of the fourteenth section of the act relating to the property of married women. The pertinent clause of that section is in these words, viz., " That nothing in this act contained shall enable any married woman to execute any conveyance of her real estate, or any instrument encumbering the same, without her husband joining therein as heretofore." But neither the word " convey " nor " encumber," according to its ordinary signification, is expressive of the act of creating a tenancy for years in lands. The former of the terms is appropriate to the transfer of a

title to a freehold, the latter to putting the property in pledge for the payment of money. That the word "conveyance" does not, when standing without assistance in a statute, signify its applicability to the passing of a chattel interest in realty is clearly indicated in the cases of *Kinny* v. *Watts*, 14 *Wend.* 38, and *Tone* v. *Brace*, 8 *Paige* 598. Nor is the word "encumber," in common usage, given so wide a scope as was in this argument sought to be put upon it. If it were said that a man had encumbered his land, no one, from such an intimation, would understand that such person had put it to lease. It may be that an existing demise would operate as a breach of a covenant against encumbrances, but that would be the result of ascribing to the word a technical meaning, and there is no reason to suppose that the word was used in this legislative act in such artificial sense. Indeed the general purpose and spirit of the law will harmonize only with the word when it is given its ordinary and not its technical meaning. The leading object of the statute is to give the married woman her property, both real and personal, as though she were a *feme sole*, and to clothe her with all the rights and authorities requisite for its possession, enjoyment and disposition, and it is indisputable that she is to have the exclusive use and benefit of her realty as though she had no husband. The limitation upon this right is that she cannot convey it, nor can she put a mortgage or a similar burthen upon it without the co-operation of her husband. But the right to the use of it is unfettered, and it is not possible for her to exercise such right, in many instances, in any beneficial manner, unless she has the capacity to put it to rent. It would be a most violent presumption that the legislature meant to say that she should be permitted to occupy and cultivate her lands in person, independently of the consent of her husband, but that she should not, in the absence of such concurrence, turn them to profit through a renting in the ordinary mode.

This second position is not well taken.

This result disposes of both cases in favor of the defendants.